

**Dated: April 21, 2016**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

In re:                              )
                                    )        Case No. 16-10322-JDL
 GENE HILBERT GAY,                  )        Ch. 13
                                    )
            Debtor.                 )

**ORDER GRANTING MOTION FOR 2004 EXAMINATION
AND FOR PRODUCTION OF DOCUMENTS**

This contested matter is before the Court on the *Motion for Rule 2004 Examination of Debtor and for Production of Documents* filed by the creditor, Allegiance Credit Union ("Allegiance"), on March 28, 2016, (the "*Motion*") [Doc. 23], the *Objection* to the *Motion* filed by Debtor, Gene Hilbert Gay ("Debtor"), filed April 11, 2016, ("*Objection*") [Doc. 27] and the *Reply of Allegiance Credit Union in Support* of *its Motion for Rule 2004 Examination of Debtor and for Production of Documents* filed on April 18, 2016 (the "*Reply*") [Doc. 31]. The *Motion* seeks to examine Debtor and, relevant to Debtor's *Objection*, seeks to compel Debtor to produce information relating to a non-party entity, Motor City OKC, L.L.C. ("Motor City").

## Factual and Procedural Background

Debtor filed for Chapter 7 bankruptcy as an individual on February 5, 2016. Debtor's Petition reflects that within the last 8 years, the Debtor has used the business name "FDBA Motor City OKC, LLC" [Doc. 1]. The Petition further discloses that Debtor operated "Motor City OKC, LLC - owned by debtor to sell used cars; opened July, 2014, closed July 2015", with a huge amount of business debt in which debtor personally guaranteed. [Doc. 1]. Debtor's Statement of Financial Affairs reflects Debtor as a member of the limited liability company, Motor City, LLC, and discloses six lawsuits against Debtor and Motor City, jointly, including one by Allegiance.  Allegiance is the holder of a judgment against Debtor and Motor City in the amount of $25,500.

Allegiance filed its Motion for a Rule 2004 examination of Debtor and for production, prior to such examination, of certain records of Motor City "to determine the extent of any co-mingling of Debtor's personal accounts and his business accounts for Motor City, as well as the disposition of funds inadvertently transferred by Allegiance to Debtor and/or Motor City".  [*Motion*, ¶ 3].  Specifically, Allegiance seeks production of the following documents relating or pertaining to Debtor and/or Motor City:

> a. All financial account documents for Debtor and/or Motor City, including but not limited to, any statements and documents reflecting withdrawal and deposit activity in regard to all accounts that Debtor and /or Motor City own, or control, or are named as an accountholder, or are a signatory to, whether individually or jointly, or in which the Debtor and/or Motor City have, or had, any legal or equitable interest from and including July 1, 2014, to the date of production.
>
> b. All documents for Debtor and/or Motor City related to the opening of any financial account including, but not limited to any, applications, signature cards, resolutions or

2

authorizations, for any count which was open at any time between July 1, 2014, and the date of production.

c. All applications for credit, loans, and accounts for Debtor and/or Motor City, including, but not limited to, applications and financial statements prepared by or on behalf of Debtor and/or Motor City to obtain credit, loans, or accounts, regardless of whether said application or financial statement was actually submitted, from and including July 1, 2014, to the date of production.

Debtor has filed his *Objection* to the *Motion*. Debtor does not object to the *Motion* insofar as it seeks a 2004 examination of the Debtor; however, Debtor asserts that Allegiance is not entitled to the production of documents by Motor City for the reason that (1) production of documents from a non-debtor third-party which may be liable to Allegiance is beyond the proper scope of the 2004 examination, (2) the production sought pertains to "matters having no relationship to the debtor's affairs and no effect on the administration of his estate", and (3) such production is "wholly irrelevant to the Debtor's personal bankruptcy". [*Objection*, pg. 3].

**Discussion**

The purpose of Rule 2004 "is to provide a tool to parties to a bankruptcy, particularly trustees, to obtain information" concerning the conduct or property of debtor, and any matters that may affect the administration of the bankruptcy estate . *In re DeShetler*, 453 B.R. 295, 301 (Bankr. S.D. Ohio 2011); *In re Marathe*, 459 B.R .850 (Bankr. M. D. Fla. 2011).  Rule 2004 provides in part:

(a) Examination on Motion

On motion of any party in interest, the court may order the examination of *any entity*

(b) Scope of Examination

> The examination of an entity under this rule or of
> the debtor under §343 of the Code may relate
> only to the acts, conduct, or property or to the
> liabilities and financial condition of the debtor, or
> to any matter which may affect the
> administration of the debtor's estate, or to the
> debtor's right to a discharge . . .

(c) Compelling Attendance and Production of Documents

> The attendance of an entity for examination and
> for the production of documents, whether the
> examination is to be conducted within or without
> the district in which the case is pending, may be
> compelled as provided in Rule 9016 for the
> attendance of a witness at a hearing or trial.

The general rule is that the scope of a Rule 2004 examination is very broad and great latitude of inquiry is ordinarily permitted. *In re GHR Energy Corp.*, 35 B.R. 534 (Bankr. D. Mass. 1983); *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wisc. 1984) ; *In re Wilcher,* 56 B.R. 428 (Bankr. N.D. Ill. 1985). It is a broad-ranging inquiry into the debtor's assets, liabilities, financial affairs and anything else that might affect the administration of the bankruptcy estate. The scope of examination allowed under Rule 2004 is larger than that allowed for discovery under the Federal Rules of Civil Procedure and can legitimately be deemed in the nature of a "fishing expedition". See *In re Vantage Petroleum Corp.*, 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983); *In re The Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D. N.Y. 1996); *In re Strecker*, 251 B.R. 878 (Bankr. D. Colo. 2000). While the primary purpose of a Rule 2004 examination is generally to permit the trustee to quickly ascertain the extent and location of the estate's assets, see *In re Good Hope Refineries, Inc.*, 9 B.R. 421, 423 (Bankr. D. Mass.1981), such examination is not limited to the debtor

or his agents, but may extend to creditors and third parties who had dealings with the debtor. *Chereton v. United States,* 286 F.2d 409, 413 (6th Cir. 1961); *In re Valley Forge Plaza Associates*, 109 B.R. 669 ( Bankr. E.D. Pa. 1990) ("Third parties having knowledge of the debtor's affairs, as well as the debtor itself, are subject to examination.").

Although the scope of the examination permitted under Rule 2004 is broad, it is not without limits. *In re Strecker,* 251 B.R. at 882. Examination of a witness as to matters having no relationship to the debtor's affairs or no effect on the administration of his estate is improper. *In re Johns-Manville Corp.*, 42 B.R. 362, 364 (S.D. N.Y. 1984). Similarly, while Rule 2004 permits examinations of "third parties", the language of the rule makes it "evident that an examination may be had only of those persons possessing knowledge of the debtor's acts, conduct or financial affairs so far as it relates to a debtor's proceeding in bankruptcy*". In re GHR Energy Corp*., 35 B.R. 534, 537 (Bankr. D. Mass. 1983). It is equally clear that Rule 2004 "may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs". *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985).

In his *Objection*, Debtor argues that Motor City is a third-party from which Allegiance seeks to elicit information for the "real purpose to identify another entity that movant's might be able to collect from . . . ." [*Objection*, pg. 2, citing *In the Matter of Wilcher*, 56 B.R. at 433-434 ]. If Allegiance's sole purpose was to identify a third-party who might be liable to it or, as is more likely here, for all practical purposes to conduct a "hearing on assets" against a mere co-judgment debtor the Court might well find that production of the

5

requested records would not be permissible. That is not the case here.[1]  *Cf. In re Doctor's Hospital of Hyde Park, Inc.*, 308 B.R. 311, 317 -18 (Bankr. N.D. Ill. 2004) (bankruptcy court has no jurisdiction over creditor's action to collect from third parties); *In the Matter of J & R Trucking Inc.*, 431 B.R. 818 (Bankr. N.D. Ind. 2010) (not permitting 2004 examination of trustees of debtor who might be personally liable for conduct as trustees). Motor City is not the normal third-party entity who has merely guaranteed a debt or is a co–judgment debtor.  Motor City was the closely held limited liability company under which Debtor conducted business.  Debtor here incurred virtually all of his more than $4 million in debt in one year as the owner, principal and guarantor of Motor City.  Debtor's obligations and financial affairs are inextricably tied to those of Motor City.  Under the circumstances, Allegiance is entitled to greater latitude in seeking the financial records of Debtor's closely held company than it would be from an independent third-party.

Transactions between a debtor and a related party often warrant heightened scrutiny. *In re Adalian*, 500 B.R. 402 (Bankr. M. D. Pa. 2013). "When an individual debtor's income is derived in substantial part from a closely held corporation controlled by the debtor, the books and records of the corporation can be critical in evaluating the financial condition of the individual debtor - if for no other reason, because the debtor is in a position to co-mingle corporate and personal assets*." Gray  v. Jackson (In re Jackson),*  453 B.R. 789, 800 (Bankr. E.D. Pa.  2011); *In re Kinard*, 518 B.R. 290 (Bankr. E.D. Pa. 2014). In the

_____

[1] Allegiance correctly points out that had it wanted to obtain information from Motor City merely to determine the collectibility of its judgment it would have been "significantly quicker and simpler" to utilize Oklahoma's collection statutes. 12 O.S. §842. Doing so, however, may have run afoul of the automatic stay to the extent Allegiance was also seeking information pertaining to the Debtor. [*Reply*, page 5].

present case, Allegiance asserts that the Debtor "repeatedly used the accounts and funds of Motor City for his own personal benefit" and that "such conduct may warrant a finding that Motor City was nothing more than an alter ego" of the Debtor. [*Reply*, pg. 4 ]. See *Wachovia Bank N.A. v. Spitko (In re Spitko)*, 357 B.R. 272, 308 (Bankr. E.D. Pa. 2006) (court concluded that the financial records of closely held entities were needed for the trustee and creditors to have accurate information concerning the debtor's assets that might be available for liquidation); *Sterling International, Inc. v. Thomas (In re Thomas)*, 2003 WL 21981707 (Bankr.D. Idaho 2003) ("In situations where the facts indicate that a debtor exercised control over and conducted business through a closely held corporation §727(a) (3) inquiries cannot be artificially limited to those records that are, strictly speaking, those of the debtors."); Resnick and Sommer, 6 *Collier on Bankruptcy* ¶ 727.03 [ 3] [e] (16 Ed. Rev. 2015)( "All books and records that are material to a proper understanding of the debtor's financial condition and that are not merely personal books or records are within the scope of' [§727(a)(3)]'").

Under §727 it is incumbent upon the debtor to provide creditors and the trustee with sufficient information to allow them to investigate the debtor's financial history and his transactions.  This is particularly true when, as is the case here, it is alleged that the debtor paid personal expenses out of business accounts, or when the debtor paid business expenses out of a personal account, or when the debtor pays one entity's expenses out of an account belonging to a different  entity.  *In the Matter of Juzwiak*, 89 F.3d 424, 428 (7th Cir. 1996). Indeed, "corporate records may be the best measure of the debtor's financial condition...where there is a direct interface between the pertinent business

person's personal finances and the finances of the corporation". *Jackson*, 453 B.R. at 798. The creditors are entitled to see sufficient records demonstrating how the debtor paid his living expenses. *Union Planters Bank, N.A. v. Connors,* 283 F.3d 896, 900 (7th Cir. 2002).

In sum, creditors are entitled to see such financial records "as to be able to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past or present*". Union Planters Bank N. A. v. Connors*, 283 F.3d 896, 899 (7th Cir. 2002); *In re Womble*, 289 B.R. 836 (Bankr. N.D. Tex. 2003). The requested records of the Debtor's closely held company are clearly within the scope of the duty of a debtor to produce records sufficient to entitle him to a discharge under §727.[2] Furthermore, the requested documents are relevant to the determination of the tracing of funds alleged to have been paid to Motor City by Allegiance in error and to investigate potential transfers of the Debtor's property made with the intent to hinder or defraud creditors.

For the foregoing reasons, the Court finds that Allegiance is entitled to the production of the requested records of the Debtor and Motor City; accordingly, the *Motion for Rule 2004 Examination of Debtor and for Production of Documents* filed by Allegiance Credit Union [Doc.23] is hereby **GRANTED.**

---

[2] The Court's reference to §727 is not to infer that there is any basis to object to the Debtor's discharge under that section (although Allegiance does state that the records sought may pertain "to Gay's right to a discharge". (*Reply*, page 4)) . The Court makes reference to §727 because the cases construing that section define the scope of the records of the Debtor's business affairs and transactions to which creditors and the trustee are entitled.