**Dated: April 21, 2016**

**The following is ORDERED:**



*Janice D. Loyd*
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re: ) | |
| ) | Case No. 16-10322-JDL |
| GENE HILBERT GAY, ) | Ch. 13 |
| ) | |
| Debtor. ) | |

### ORDER GRANTING MOTION FOR PRODUCTION OF DOCUMENTS

This contested matter is before the Court on the *Motion Of Allegiance Credit Union for Production of Documents By Bank 7 Under Rule 2004* ("Allegiance") filed on March 28, 2016, (the "*Motion*") [Doc. 24]; the *Objection* to the *Motion* filed by Debtor, Gene Hilbert Gay ("Debtor"), on April 11, 2016, ("*Objection*") [Doc. 28] and the *Reply of Allegiance Credit Union in Support of its Motion for Production of Documents By Bank 7 Under Rule 2004* filed on April 18, 2016 (the "*Reply*") [Doc.30]. The *Motion* seeks an order of the Court requiring Bank 7 to produce documents relating to the Debtor and to a non-party entity, Motor City OKC, L.L.C. ("Motor City"). The Debtor's *Objection* does not object to production of documents relating to the Debtor but only as to Motor City.

### Factual and Procedural Background

Debtor filed for Chapter 7 bankruptcy as an individual on February 5, 2016. Debtor's Petition reflects that within the last 8 years, the Debtor has used the business

name "FDBA Motor City OKC, LLC" [Doc. 1]. The Petition further discloses that Debtor operated "Motor City OKC, LLC - owned by debtor to sell used cars; opened July, 2014, closed July 2015", with a huge amount of business debt in which debtor personally guaranteed. [Doc. 1]. Debtor's Statement of Financial Affairs reflects Debtor as a member of the limited liability company, Motor City, LLC, and discloses six lawsuits against Debtor and Motor City, jointly, including one by Allegiance. Allegiance is the holder of a judgment against Debtor and Motor City in the amount of $25,500.

Allegiance filed its Motion for production of Documents by Bank 7 of certain records of Debtor and/or Motor City "to determine the extent of any co-mingling of Debtor's personal accounts and his business accounts for Motor City, as well as the disposition of funds inadvertently transferred by Allegiance to Debtor and/or Motor City". [*Motion*, ¶ 3]. Specifically, Allegiance seeks production of the following documents relating or pertaining to Debtor and/or Motor City:

> a. All financial account documents for Debtor and/or Motor City, including but not limited to, any statements and documents reflecting withdrawal and deposit activity in regard to all accounts that Debtor and /or Motor City own, or control, or are named as an accountholder, or are a signatory to, whether individually or jointly, or in which the Debtor and/or Motor City have, or had, any legal or equitable interest from and including July 1, 2014, to the date of production.
>
> b. All documents for Debtor and/or Motor City related to the opening of any financial account including, but not limited to any, applications, signature cards, resolutions or authorizations, for any count which was open at any time between July 1, 2014, and the date of production.
>
> c. All applications for credit, loans, and accounts for Debtor and/or Motor City, including, but not limited to, applications and financial statements prepared or completed by or on behalf of Debtor and/or Motor City to obtain credit, loans, or accounts, regardless of whether said application or financial statement

was actually submitted, from and including July 1, 2014, to the date of production.

Debtor has filed his *Objection* to the *Motion*. As stated above, Debtor does not object to the *Motion* insofar as it seeks production of records in the possession of Bank 7 pertaining to the Debtor; however, Debtor asserts that Allegiance is not entitled to the production of documents relating to Motor City for the reason that (1) production of documents from a non-debtor third-party which may be liable to Allegiance is beyond the proper scope of the 2004 examination, (2) the production sought pertains to "matters having no relationship to the debtor's affairs and no effect on the administration of his estate", and (3) such production is "wholly irrelevant to the Debtor's personal bankruptcy". [*Objection*, pg. 3].

## Discussion

The purpose of Rule 2004 "is to provide a tool to parties to a bankruptcy, particularly trustees, to obtain information" concerning the conduct or property of debtor, and any matters that may affect the administration of the bankruptcy estate . *In re DeShetler*, 453 B.R. 295, 301 (Bankr. S.D. Ohio 2011); *In re Marathe*, 459 B.R .850 (Bankr. M. D. Fla. 2011).  Rule 2004 provides in part:

>(a) Examination on Motion
>
>>On motion of any party in interest, the court may order the examination of *any entity*
>
>(b) Scope of Examination
>
>>The examination of an entity under this rule or of the debtor under §343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the

>> debtor's right to a discharge . . .
>
> (c) Compelling Attendance and Production of Documents
>
>> The attendance of an entity for examination and for the production of documents, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial.

The general rule is that the scope of a Rule 2004 examination is very broad and great latitude of inquiry is ordinarily permitted. *In re GHR Energy Corp.*, 35 B.R. 534 (Bankr. D. Mass. 1983); *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wisc. 1984) ; *In re Wilcher,* 56 B.R. 428 (Bankr. N.D. Ill. 1985).   It is a broad-ranging inquiry into the debtor's assets, liabilities, financial affairs and anything else that might affect the administration of the bankruptcy estate. The scope of examination allowed under Rule 2004 is larger than that allowed for discovery under the Federal Rules of Civil Procedure and can legitimately be deemed in the nature of a "fishing expedition".  See *In re Vantage Petroleum Corp.*, 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983); *In re The Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D. N.Y. 1996); *In re Strecker*, 251 B.R. 878 (Bankr. D. Colo. 2000).  While the primary purpose of a Rule 2004 examination is generally to permit the trustee to quickly ascertain the extent and location of the estate's assets, see *In re Good Hope Refineries, Inc.*, 9 B.R. 421, 423 (Bankr. D. Mass.1981), such examination is not limited to the debtor or his agents, but may extend to creditors and third parties who had dealings with the debtor.  *Chereton v. United States,* 286 F.2d 409, 413 (6th Cir. 1961); *In re Valley Forge Plaza Associates*, 109 B.R. 669 ( Bankr. E.D. Pa. 1990) ("Third parties having knowledge of the debtor's affairs, as well as the debtor itself, are subject to examination.").

Although the scope of the examination permitted under Rule 2004 is broad, it is not

without limits. *In re Strecker,* 251 B.R. at 882. Examination of a witness as to matters having no relationship to the debtor's affairs or no effect on the administration of his estate is improper. *In re Johns-Manville Corp.*, 42 B.R. 362, 364 (S.D. N.Y. 1984). Similarly, while Rule 2004 permits examinations of "third parties", the language of the rule makes it "evident that an examination may be had only of those persons possessing knowledge of the debtor's acts, conduct or financial affairs so far as it relates to a debtor's proceeding in bankruptcy*". In re GHR Energy Corp*., 35 B.R. 534, 537 (Bankr. D. Mass. 1983). It is equally clear that Rule 2004 "may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs". *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985).

In his *Objection*, Debtor argues that Motor City is a third-party from which Allegiance seeks to elicit information for the "real purpose to identify another entity that movant's might be able to collect from . . .." [*Objection*, pg. 2, citing *In the Matter of Wilcher*, 56 B.R. at 433-434 ]. If Allegiance's sole purpose was to identify a third-party who might be liable to it or, as is more likely here, for all practical purposes to conduct a "hearing on assets" against a mere co-judgment debtor the Court might well find that production of the requested records would not be permissible. That is not the case here.[1] *Cf. In re Doctor's Hospital of Hyde Park, Inc.*, 308 B.R. 311, 317 -18 (Bankr. N.D. Ill. 2004) (bankruptcy court has no jurisdiction over creditor's action to collect from third parties); *In the Matter of J & R Trucking Inc.*, 431 B.R. 818 (Bankr. N.D. Ind. 2010) (not permitting 2004 examination of

---

[1] Allegiance correctly points out that had it wanted to obtain information from Motor City merely to determine the collectibility of its judgment it would have been "significantly quicker and simpler" to utilize Oklahoma's collection statutes. 12 O.S. §842. Doing so, however, may have run afoul of the automatic stay to the extent Allegiance was also seeking information pertaining to the Debtor. [*Reply,* page 5].

trustees of debtor who might be personally liable for conduct as trustees).  Motor City is not the normal third-party entity who has merely guaranteed a debt or is a co–judgment debtor.  Motor City was the closely held limited liability company under which Debtor conducted business.  Debtor here incurred virtually all of his more than $4 million in debt in one year as the owner, principal and guarantor of Motor City.  Debtor's obligations and financial affairs are inextricably tied to those of Motor City. Under the circumstances, Allegiance is entitled to greater latitude in seeking the financial records of Debtor's closely held company than it would be from an independent third-party.

Transactions between a debtor and a related party often warrant heightened scrutiny. *In re Adalian*, 500 B.R. 402 (Bankr. M. D. Pa. 2013). "When an individual debtor's income is derived in substantial part from a closely held corporation controlled by the debtor, the books and records of the corporation can be critical in evaluating the financial condition of the individual debtor - if for no other reason, because the debtor is in a position to co-mingle corporate and personal assets*." Gray v. Jackson (In re Jackson),* 453 B.R. 789, 800 (Bankr. E.D. Pa.  2011); *In re Kinard*, 518 B.R. 290 (Bankr. E.D. Pa. 2014).

Creditors are entitled to see such financial records "as to be able to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past or present*". Union Planters Bank  NA v. Connors*, 283 F.3d 896, 899 (7th Cir. 2002); *In re Womble*, 289 B.R. 836 (Bankr. N.D. Tex. 2003). The failure to maintain such adequate records may result in the denial of the debtor's discharge under §727(a)(3) since that statute requires the maintenance of adequate records not only as to the debtor's financial condition but also of his "business transactions".  Courts which have considered §727(a)(3) in the context of a debtor who

owns or controls closely held entities, have concluded that the debtor's failure to keep adequate records for such entities, as well as of the debtor's business dealings with such entities, may constitute a violation of §727(a)(3).  *In re Womble*, 289 B.R. at 837; *Morton v. Dreyer (In re Dreyer),* 127 B.R. 587, 594 (Bankr. N.D. Tex. 1991); *Cf. WTHW Investment Builders v. Dias (In re Dias),* 95 B.R. 419 (Bankr.N.D. Tex. 1988)

For the foregoing reasons, the Court finds that Allegiance is entitled to the production of the requested records of Bank 7 pertaining to both the Debtor and Motor City; accordingly the *Motion of Allegiance Credit Union for Production of Documents Under Rule 2004*  [Doc.24] is hereby **GRANTED.**

# # #